UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

DENNIS STRONG,

  Plaintiff,

v.             Case No. 17-cv-1714-pp

WISCONSIN STATE PUBLIC DEFENDER,
KELLI S. THOMPSON, DEVON M. LEE,
CARRIE LAPLANT, AMBER FRICKE,
ERIC R. EICKHOFF, HOGAN & EICKHOFF, SC,
PAUL HYLAND, FORTE INVESTIGATIONS, LLC,
CHRISTOPHER J. ERTL, ERTL LAW OFFICE, LLC,
MICHAEL S. FITZSIMMONS, FITZSIMMONS LAW OFFICE, LLC,
and REED MARTIN,

  Defendants.

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYMENT OF THE FILING FEE (DKT. NO. 2), DENYING AS MOOT PLAINTIFF'S MOTION TO AMEND RELIEF (DKT. NO. 7), SCREENING PLAINTIFF'S COMPLAINT (DKT. NO. 1) AND DISMISSING CASE FOR FAILURE TO STATE A CLAIM**

  The plaintiff is a state prisoner who is representing himself. He filed a complaint (one of seven he has filed in the past year) under 42 U.S.C. §1983, alleging that the defendants violated his civil rights. Dkt. No. 1. This decision resolves the plaintiff's motion for leave to proceed without prepayment of the filing fee, dkt. no. 2, and his motion to amend relief, dkt. no. 7. It also screens his complaint, dkt. no. 1.

## I. Motion for Leave to Proceed without Prepaying the Filing Fee (Dkt. No. 2)

The Prison Litigation Reform Act applies to this case because the plaintiff was in custody when he filed his complaint. 28 U.S.C. §1915. That law allows a court to give an incarcerated plaintiff the ability to proceed with his lawsuit without prepaying the civil case filing fee, if he meets certain conditions. One of those conditions is that the plaintiff pay an initial partial filing fee. 28 U.S.C. §1915(b). Once the plaintiff pays the initial partial filing fee, the court may allow the plaintiff to pay the balance of the $350 filing fee over time, through deductions from his prisoner account. Id.

The court waived the initial partial filing fee. Dkt. No. 4. The court will grant the plaintiff's motion for leave to proceed without prepayment of the filing fee, and will allow him to pay the $350 filing fee over time in the manner explained at the end of this order.

## II. Screening the Plaintiff's Complaint

### A. Federal Screening Standard

The law requires the court to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the plaintiff raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from relief. 28 U.S.C. §1915A(b).

To state a claim, a complaint must contain sufficient factual matter, accepted as true, "that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim under 42 U.S.C. §1983, a plaintiff must allege that 1) someone deprive him of a right secured by the Constitution or laws of the United States; and 2) that person was acting under color of state law. Buchanan-Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009) (citing Kramer v. Vill. of N. Fond du Lac, 384 F.3d 856, 861 (7th Cir. 2004)); see also Gomez v. Toledo, 446 U.S. 635, 640 (1980). The court gives a *pro se* plaintiff's allegations, "however inartfully pleaded," a liberal construction. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

B.  The Plaintiff's Allegations

The plaintiff's complaint consists of two documents: the court's form complaint, in which the plaintiff lists the defendants and includes his request for relief, dkt. no. 1, and a fifty-three-page document that contains the plaintiff's allegations, dkt. no. 1-1. He also filed 124 pages of attachments to the complaint. Dkt. No. 1-2. The fifty-three-page filing consists of a heading that reads, "State of Wisconsin Circuit Court Outagamie County," a caption for

3

two state criminal cases (State of Wisconsin v. Dennis Strong, Case No. 17-CM-282 and Case No. 11-CF-05), a state civil case and appeal (Strong v. Gehring, *et al.*, Case No. 17-CV-615 and Appeal No. 17-AP-1919), and a title that reads, "Affidavit – Statement of Fact in Support of Legal Malpractice Cause of Action – Civil Right Action for Deprivations of Rights." Dkt. No. 1-1 at 1.

The plaintiff alleges that the same conduct led to probation revocation proceedings in Case 11-CF-05 and criminal charges in Case 17-CM-282. Dkt. No. 1-1 at 2-3. According to the affidavit attached to the complaint, an individual named "Willard" was the complaining witness in Case 17-CM-282. Id. In May 2017, the plaintiff told defendant Attorney Eric Eickhoff, his public defender in Case 11-CF-05 (and briefly for Case 17-CM-282), "of a party who alerted Strong of material evidence to include but not limited to potential exculpatory value and impeachment coupled with a showing of bias against Strong and to have had direct and indirect contact with Willard[.]" Id. at 2-3, 38-39. Defendant Eickhoff assured the plaintiff that he would follow up with the party, but Eickhoff later told the plaintiff that a private investigator should do it. Id. at 3. Eickhoff obtained approval for funding to hire the private investigator. Id. In June 2017, defendant Eickhoff told the plaintiff that the private investigator, defendant Paul Hyland, "[was] working on it." Id. at 4.

Defendant Eickhoff did not subpoena "a single witness" to appear at the plaintiff's July 13, 2017 revocation hearing in Case 11CF05. Id. at 7. The plaintiff alleges that the reason that Eickhoff called no witnesses was

4

> to lay a foundation down to protect Attorney Eickhoff's own legal interest in a legal malpractice claim or alike remedies and not that of Strong's best legal interest, by Attorney Eickhoff's efforts . . . to establish there was no loss to the legal defense on Strong's behalf when the above contracted investigative services with Paul Hyland were ultimately loss [sic] on or about 7/12/17 as a result of Attorney Eickhoff's negligence and misrepresentation in the legal services obligated to Strong.

Id. at 7-8.

On July 7, 2017, the plaintiff had a motion hearing before Judge Mitchell J. Metropulos in Case 17-CM-282. Id. at 8. He appeared before Judge Metropulos again on October 25, 2017 for further proceedings in that case. Id. at 14. At that hearing, Judge Metropulos stated that the plaintiff's attorney, Mr. Mann, had withdrawn and that the plaintiff had forfeited his right to counsel. Id. at 14-15.

Defendant Eickhoff disregarded the plaintiff's request to research whether Willard's statement in a Violation Summary ("Willard was not aware of Mr. Strong's criminal history") and Agent Corrigan's testimony at the July 31, 2017 revocation hearing in Case 11-CF-05, were true. Id. at 15. Eickhoff also refused to cross-examine Willard and Corrigan at the revocation hearing. Id. at 16. Willard and Corrigan both were unavailable at the "continued revocation hearing," which took place on November 21, 2017. Id.

On September 6, 2017, defendant Devon Lee, Legal Counsel of the Wisconsin State Public Defender, determined that defendant Eickhoff caused the plaintiff's Case 11-CF-05 "irreparable harm." Id. at 35. The State Public Defender appointed defendant Christopher Ertl as "successor counsel" on

5

September 14, 2017, but that representation ended on October 4, 2017, "due to Attorney Ertl's blatant disingenuous dialogue with Strong coupled with Attorney Ertl's lack of professionalism[.]" Id. at 36.

Defendant Attorney Michael Fitzsimmons succeeded defendant Ertl in Case 11CF05. Id. at 39. Defendant Fitzsimmons's office was located about two hours from the jail, and it was "not feasible for [him] to come to the jail to visit [Strong]." Id. at 39-40. The plaintiff alleges that even so, ALJ Kalashian would not reschedule the November 21, 2017 date for the completion of the final revocation hearing in Case 11-CF-05. Id. at 41-42.

Defendant Attorney Reed Martin was the "successor counsel" to defendant Fitzsimmons. Id. at 42. The plaintiff asked defendant Martin for advanced notice of his intended arrival at the Outagamie County Jail, and also asked that he not arrive before 10:00 a.m. Id. The plaintiff says that he needed the advanced notice to organize his extensive legal materials, and because the plaintiff had "chronic attention deficit issues that require treatment with medication" and the jail staff deliver the plaintiff's morning dose of medication as late at 10:00 a.m. Id. at 42-43.

On November 15, 2017, at 8:30 a.m., the plaintiff received notice that he had a "professional visitor" at the jail. Id. at 44. He took his legal materials to the meeting room, and found a person there he assumed to be defendant Martin. Id. The plaintiff set his boxes down on the table and asked the officer if he could go and get his laptop. Id. at 44-45. When the plaintiff returned,

6

defendant Martin stated, "in a rather aggressively postured tone," "get your box off my stuff[.]" Id. at 45. The conversation that followed resulted in defendant Martin calling to an officer in a loud tone, "deputy this man is being belligerent" and leaving the jail. Id. at 46.

On November 21, 2017, the plaintiff appeared before ALJ Kalashian for the continuation of his final revocation hearing in Case 11-CF-05, "without legal counsel as entitled." Id. At the end of the hearing, Judge Kalashian issued an order giving the plaintiff another ten days for the submission of supplemental arguments and exhibits. Id. at 47. The plaintiff asked for legal representation through the conclusion of an administrative appeal to the Administrator of the Division of Hearing and Appeals. Id.

On November 22, 2017, attempting to reach defendant State Public Defender Local Managing Attorney Carrie LaPlant, the plaintiff spoke with a clerical staff member named Jeremy, and asked why defendant Martin failed to appear at the November 21, 2017 final revocation hearing. Id. at 48. Jeremy apologized, saying that he did not know that Martin would not appear. Id. Two days later, the plaintiff spoke with defendant Amber Fricke, a clerical staff member at the public defender's office, to ensure that he would have legal representation through the appeal to the Administrator of the Division of Hearings and Appeals following the impending revocation decision by Judge Kalashian. Id. at 48-49. Defendant Fricke told the plaintiff that her office could no longer secure legal counsel for him because he "continually fired" assigned

7

attorneys. Id. at 49. The plaintiff does not agree with this characterization of his attorneys' representations. Id.

The plaintiff has asked the court to award him monetary damages and "injunctive and/or declaratory relief." Dkt. No. 1 at 4. The plaintiff also moved to amend the that relief. Dkt. No. 7. He states that he would like to amend his request for relief to include "collateral, declaratory, equitable, injunctive, and prospective in addition to any other relief deemed just and proper by the court, aside from any monetary relief sought in the original complaint." Id.

    C.    The Court's Analysis

As far as the court can tell, the plaintiff wants relief because he had no public defender for his final revocation hearing or for the administrative appeal of his final probation revocation hearing in Case 11-CF-05.[1] He also wants to sue his public defenders—defendants Eickhoff, Ertl, Fitzsimmons and Martin—for malpractice.

To state a claim under 42 U.S.C §1983, a plaintiff must allege that someone acting under color of state law deprived him of a right secured by the Constitution or the laws of United States. Rodriguez v. Plymouth Ambulance Serv., 577 F.3d 816, 822 (7th Cir. 2009). A person acting "under color of state law" is a person who exercised power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state

---

[1] In Strong v. Wisconsin Dep't of Admin., et al., Case No. 17-cv-1765-pp (E.D. Wis.), the plaintiff has sued Judge Kalashian and other officials, alleging that the failure to have an attorney at his final revocation hearing violated his constitutional rights.

law." Id.; West v. Atkins, 487 U.S. 42, 49 (1988). Criminal defense attorneys are not liable under §1983, because they do not act under the color of state law; they are *adversaries* of the State. Polk Cty. v. Dodson, 454 U.S. 312, 318, 325 (1981); see Swift v. Swift, 556 Fed. App'x 509, 510-11 (7th Cir. 2014); West v. Atkins, 487 U.S. at 50. Even attorneys appointed by the State Public Defender are not acting under the color of state law. Polk, 454 U.S. at 318 ("[A] public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding.").

The plaintiff may be able to bring a malpractice claim against his attorneys in *state* court, or he might be able to argue ineffective assistance of counsel on direct appeal of his conviction or in a federal *habeas* petition. The plaintiff cannot state a claim against his public defenders under §1983. The court will dismiss the public defenders and their law offices (Eickhoff, Hogan & Eickhoff SC, Ertl, Ertl Law Office, Fitzsimmons, Fitzsimmons Law Office and Martin).

The plaintiff has also sued the Wisconsin State Public Defender, State Public Defender Kelli Thompson (the head of that agency), Public Defender Devon Lee and Local Managing Attorney Carrie LaPlant. The plaintiff cannot sue the Wisconsin State Public Defender under §1983; it is not a "person," and §1983 prohibits "persons" acting under color of state law from depriving a

person of his constitutional rights. The court will dismiss the Wisconsin State Public Defender.

It seems that the plaintiff sued Thompson and LaPlant because they were supervisors at the State Public Defender's Office; he hasn't alleged that these two individuals were personally involved in depriving him of his constitutional rights. Even if criminal defense attorneys were state actors, "[i]n order for a supervisor to be liable" under §1983, the supervisor must be "personally responsible for the deprivation of the constitutional right." Matthews v. City of E. St. Louis, 675 F.3d 703, 708 (7th Cir. 2012) (quoting Chavez v. Ill. State Police, 251 F.3d 612, 651 (7th Cir. 2001)). The plaintiff has not alleged that these two individuals were personally involved in depriving him of his constitutional rights, and the court will dismiss them as defendants. The court does not know why the plaintiff would want to sue Lee; Lee is the person who indicated that Eickhoff had not done a good job for the plaintiff. The court does not understand why the plaintiff believes that Lee violated the plaintiff's rights. The court will dismiss Lee.

The plaintiff also sued Amber Fricke, a clerical staff member at the state public defender's office who allegedly told the plaintiff that her office could no longer secure counsel for him because he "continually fired" his assigned attorneys. Defendant Fricke is not a state actor, and it does not violate the Constitution for a clerical worker to tell a person that her office cannot appoint a lawyer to represent him.

Neither public investigator Paul Hyland nor his business, Forte Investigations, are state actors. In fifty-three pages of his affidavit, the plaintiff does not explain what, if anything, he thinks Hyland did to violate his constitutional rights.

Despite an eight-page complaint, a fifty-three-page affidavit and over a hundred pages of attachments, the plaintiff has not sued anyone who this court can hold liable under §1983, or asserted any federal constitutional claims. The court will dismiss this case.

## III. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepayment of the filing fee. Dkt. No. 2.

The court **DENIES AS MOOT** the plaintiff's motion to amend relief. Dkt. No. 7.

The court **ORDERS** that this case is **DISMISSED** under 28 U.S.C. §§1915(e)(2)(B) and 1915A(b)(1) because the complaint fails to state a claim for which the court can grant relief. The court will enter judgment accordingly.

The Clerk of Court will document that the plaintiff has incurred a "strike" under 28 U.S.C. §1915(g).

The court **ORDERS** that the agency having custody of the plaintiff must collect from his institution trust account the $350 balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's

trust account and forwarding payments to the clerk of court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency must clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state or federal institution, the transferring institution must forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to the warden of the Redgranite Correctional Institution, and to Corey F. Finkelmeyer, Assistant Attorney General, Wisconsin Department of Justice, P.O. Box 7857, Madison, Wisconsin, 53707-7857.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within 30 days of the entry of judgment. See Fed. R. of App. P. 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. See Fed. R. App. P. 4(a)(5)(A).

In some cases, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within 28 days of the entry of judgment. The court cannot extend this deadline. See Fed. R. Civ P. 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time,

generally no more than one year after the entry of the judgment. The court cannot extend this deadline. See Fed. R. Civ. P. 6(b)(2).

The court expects parties to review closely all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated in Milwaukee, Wisconsin this 25th day of July, 2018.

BY THE COURT:

**HON. PAMELA PEPPER**
**United States District Judge**